**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DIONISIO R., <br> Plaintiff, <br> v. <br> COMMISSIONER OF SOCIAL SECURITY, <br> Defendant. | Civil Action No.: 23-22067 <br><br> **OPINION & ORDER** |

**CECCHI, District Judge.**

## I.  INTRODUCTION

Before the Court is the appeal of Dionisio R.[1] ("Plaintiff") seeking review of a final

decision by the Commissioner of Social Security ("Commissioner") denying his application for

disability insurance benefits ("DIB") under the Social Security Act ("SSA" or the "Act"). ECF No.

1; *see also* ECF No. 5 ("Br."). Defendant opposed the appeal (ECF No. 7) "Opp.")), and Plaintiff

replied in support (ECF No. 8 ("Reply")). This matter is decided without oral argument pursuant

to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, the decision of the

Administrative Law Judge ("ALJ") is affirmed.

## II.  BACKGROUND

Plaintiff is a 55-year-old with a high school education. ECF No. 4 ("R.") at 39. He

previously worked as a truck driver, including driving garbage trucks and snowplows. R. at 39.

Plaintiff testified that he has been unable to work due to pain in his back, neck, elbows, and ankles.

R. at 40. He further stated that he has experienced depression and anxiety because of the pain.

---

[1] Pursuant to District of New Jersey standing order 2021-10, "any non-governmental party will be identified and referenced solely by first name and last initial" due to privacy concerns present in social security cases. D.N.J. Standing Order 2021-10; see also *Bryan S. v. Kijakazi*, No. 20-11145, 2022 WL 2916072, at *1 n.1 (D.N.J. July 25, 2022).

R. at 47. In his DIB application, Plaintiff and his girlfriend also reported several other limitations, but indicated Plaintiff was able to prepare simple meals, wash dishes, fold clothes, sweep/mop, drive, grocery shop, attend church, and watch TV. R. at 318-19, 334-36

Plaintiff filed for DIB on October 22, 2019, alleging disability beginning on February 7, 2014. R. at 271-72. His application was denied initially, R. at 137-42, on reconsideration, R. at 159-61, and following a hearing on August 7, 2020, by an ALJ decision issued January 26, 2021, R. at 112-30. The Appeals Council subsequently vacated that decision and remanded for further proceedings, in part because the recording of the hearing was inaudible. R. at 131-34. The Council also noted that Plaintiff had previously been found not disabled through March 27, 2018, as part of a prior benefits application. R. at 132.

The ALJ held another hearing on July 12, 2022. R. at 34-64. At that hearing, Plaintiff amended his disability onset date to March 28, 2018. R. at 137-38. The ALJ issued a new decision on September 14, 2022, finding Plaintiff not disabled during the relevant period. R. at 14-33. The Appeals Council denied Plaintiff's request for review of that decision, rendering the ALJ decision final. R. at 1-6. Plaintiff then brought the instant appeal on November 7, 2023. ECF No. 1.

III.    **LEGAL STANDARD**

   A.  **Standard of Review**

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g), 1383(c)(3). The Court is not "permitted to re-weigh the evidence or impose [its] own factual determinations," but must give deference to the administrative findings. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *see also* 42 U.S.C. § 405(g). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and substantiated by substantial evidence. *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir.

1978) (citations omitted). Substantial evidence is more than a mere scintilla and is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Chandler*, 667 F.3d at 359 (citations omitted). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 08-cv1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). In other words, under this deferential standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. *See Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007).

### B.  Determining Disability

In order to be eligible for benefits under the SSA, a claimant must show he is disabled by demonstrating an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Considering the claimant's age, education, and work experience, disability is evaluated by the claimant's ability to engage in his previous work or any other form of substantial gainful activity existing in the national economy. *Id.* §§ 423(d)(2)(A); 1382c(a)(3)(B). A claimant is disabled for SSA purposes only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 1382c(a)(3)(B).

Decisions regarding disability are made individually and will be "based on evidence adduced at a hearing." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)). Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3); 1382(a)(3)(D).

### C. Sequential Evaluation for a Continuing Disability

The Social Security Administration follows a five-step, sequential evaluation to determine whether a claimant is disabled under the SSA. 20 C.F.R. §§ 404.1520, 416.920.

First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Sykes*, 228 F.3d at 262. Second, if the claimant is not engaged in such activity, the ALJ determines whether the claimant has any impairments severe enough to limit his ability to work. *Id.* Third, if he has any severe impairments, the ALJ considers the medical evidence to determine whether the impairment or combination of impairments is included in 20 C.F.R. Part 404, Subpt. P, App. 1 (the "Listings"). If the claimant's impairment(s) medically equal one of the Listings, this results in a presumption of disability. *Sykes*, 228 F.3d at 262. If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains despite his impairment. *Id.* at 263. Fourth, the ALJ must consider whether the claimant's RFC is adequate to perform his past relevant work. *Id.* Fifth, if his RFC is not sufficient to perform past work, the ALJ must determine whether there is other work in the national economy the claimant can perform. *Id.*

The evaluation continues through each step unless it is ascertained at any point that the claimant is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the ultimate burden of establishing steps one through four of this test. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 202 (3d Cir. 2019). The burden shifts to the Commissioner at step five to prove that the claimant can perform a job that exists in the national economy. *Ramirez v. Barnhart*, 372 F.3d 546, 555 (3d Cir. 2004).

## IV.   DISCUSSION

### A.  Summary of the ALJ's Decision

After considering the evidence and following the five-step analysis outlined in 20 C.F.R. § 404.1520(a), the ALJ found that Plaintiff was not disabled during the relevant period. R. at 17-27.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant period. R. at 19.

At step two, the ALJ found that Plaintiff had the following severe impairments: lumbar and cervical disc spine herniation, right and left elbow impairment, torn ligaments of the left shoulder, torn ligaments of the left ankle, obesity, asthma, depressive disorder, bipolar disorder, and anxiety disorder. R. at 19-20.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listings. R. at 20.

The ALJ then determined that Plaintiff had an RFC for:

light work as defined in 20 CFR 404.1567(b) except he can occasionally climb ramps and stairs but never climb ladders, ropes and scaffolds. He can occasionally balance, stoop, kneel, crouch but never crawl. He can frequently reach overhead

with the left upper extremity, which is the non dominant hand. He can frequently

turn his neck from side to side and up and down. He must avoid concentrated

exposure to extreme cold, fumes, odors, dusts, gases and poor ventilation. He is

able to understand remember and carry out simple instructions. He can have

occasional interaction with supervisors, coworkers and the public.

R. at 22.

At step four, the ALJ determined that Plaintiff could not perform any past relevant

work, crediting the testimony of the vocational expert. R. at 25.

At step five, the ALJ found that, considering the Plaintiff's RFC and the testimony

of the vocational expert, there were jobs that existed in significant numbers in the national

economy that Plaintiff could have performed. R. at 26. Accordingly, the ALJ determined

that Plaintiff was not disabled during the relevant period. R. at 27.

**B. Plaintiff's Arguments on Appeal**

Plaintiff puts forth two arguments in the instant appeal. First, he claims that the ALJ's RFC

determination fails to account for Plaintiff's mental limitations and bilateral elbow impairment.

Second, he claims that the AJL's step five analysis is not based on substantial evidence. Each

argument will be discussed in turn.

a.   RFC Determination

i.   *Mental Limitations*

Plaintiff argues that the ALJ's RFC determination was flawed because it did not account

for mental limitations that the ALJ found to be present at step two. Plaintiff notes that at step two,

the ALJ found that Plaintiff was "moderately limited" in his ability to maintain concentration,

persistence, or pace.[2] Br. at 13; *see* R. at 21. According to Plaintiff, this finding regarding his

mental limitation "is not reflected anywhere in the RFC." Br. at 13. Plaintiff thus maintains that

the RFC finding is "in conflict" with the ALJ's step two analysis, and therefore "incomplete and

unsupported." Br. at 13.

Plaintiff's argument fails because the ALJ provided sufficient analysis to square his finding

of mental limitation at step two with this RFC determination that Plaintiff can perform unskilled

work. A finding of moderate mental impairment does not foreclose an RFC determination that a

person may perform unskilled work, so long as the ALJ provides a "valid explanation." *See Hess*

*v. Comm'r of Soc. Sec.*, 931 F.3d 198, 209-211 (3d Cir. 2019) ("[A]s long as the ALJ offers a

'valid explanation,' a[n unskilled work] limitation is permitted after a finding that a claimant has

'moderate' difficulties in 'concentration, persistence, or pace.'"). Here, after noting that the RFC

determination "reflects the degree of [mental] limitation" that was found, the ALJ opined as

follows:

> Turning to the claimant's mental impairments, treatment notes during the
> period at issue show that treatment providers noted that the claimant was doing well
> on anxiety medications (Ex. B5F/234, 258). The claimant endorsed paranoia,
> nervousness, mood swings, racing thoughts and short temper. Generalized anxiety
> was a working diagnosis, with the claimant reporting significant symptoms of
> anxiety, but with mental status generally showing normal mood and affect (Exs.
> B5F/15; B17F/28, 52-53). Overall, given the claimant's management with
> medication, as well as a lack of significant findings on mental status examination,

---

[2] Although Plaintiff describes the finding as "concentration, persistence, *and* pace" (emphasis added), the standard is disjunctive. *See* R. at 21.

> I find that the claimant retained the ability to perform work involving simple
>
> instructions, along with limited interactions with others.

R. at 22, 24. This analysis constitutes a sufficiently "valid explanation" to support the ALJ's

determination that Plaintiff, despite his mental limitations, was capable of performing unskilled

work. [3] *See Stacey S. v. Comm'r of Soc. Sec.*, No. 21-20433, 2022 WL 16834673, at *6 (D.N.J.

Nov. 8, 2022) (finding "valid explanation" where ALJ referenced "evidence related to cognition

and mental health" including plaintiff's "good mood and effect"); *Daniel M. v. Comm'r of Soc.

Sec.*, No. 21-10533, 2022 WL 2952912, *4-5 (D.N.J. July 26, 2022) (finding "valid explanation"

where ALJ considered "treatment evidence" and a "mental status examination"); *cf. Vargas v.

Acting Comm'r of Soc. Sec.*, No. 21-19077, 2022 WL 17887225, at *5 (D.N.J. Dec. 23, 2022)

(finding no "valid explanation" where ALJ "provided only one broad, single-sentence

explanation"). Thus, Plaintiff's argument is without merit.

### ii. *Elbow Impairment*

Plaintiff also argues that the ALJ's RFC determination was flawed because it did not

contain limitations corresponding to his finding of bilateral elbow impairment at step two. Plaintiff

notes that at step two, the ALJ found that Plaintiff suffers from "severe impairment" in both

elbows. Br. at 14; *see* R. at 19. However, as noted by Plaintiff, the ALJ's RFC determination only

included a limitation to the "*left* upper extremity." Br. at 14. Plaintiff asserts that this failure to

include a limitation to the *right* upper extremity, despite having found that extremity to also be

severely impaired, renders the RFC determination improper. Br. at 15.

---

[3] Insofar as Plaintiff points to specific alleged inadequacies in the ALJ's discussion, *see* Br. at 13 (noting the RFC "contains no discussion about the time Plaintiff would be off task" and "no reference to the pace of the work being performed"), a proper RFC analysis requires "no magic set of words or order of analysis." *Stacey S.*, 2022 WL 16834673, at *6.

Plaintiff's argument fails because a finding of severe impairment at step two does not require an ALJ to impose a corresponding limitation in his RFC determination. Indeed, "it is frequently the case that an ALJ finds a severe impairment at step two, but does not find that said impairment limits the claimant's [RFC]." *Wyatt v. Comm'r of Soc. Sec.*, No. 10-6751, 2011 WL 4900013, at *5 (D.N.J. Oct. 13, 2011). This is because, for purposes of the step-two analysis, a finding of severity only means that evidence has been presented "to at least raise the possibility that [the claimant] has more than a slight abnormality." *Id.* Accordingly, whether an impairment is severe for the purposes of step two, and whether it results in a limitation on an individual's capacity to work, "are distinct questions." *Andres F. v. Comm'r of Soc. Sec.*, No. 19-19527, 2022 WL 769972, at *5 n.3 (D.N.J. Mar. 14, 2022).

Moreover, the ALJ's decision indicates that he properly considered Plaintiff's bilateral elbow impairment and imposed appropriate limitations in his RFC determination. For instance, the ALJ found that "regarding the claimant's bilateral elbow and torn ligaments of the left shoulder . . . treatment records during the period at issue showed *intact musculoskeletal and neurological functioning, including full upper and lower extremity strength, normal extremity range of motion, intact gait, and no focal motor deficits*." R. at 23 (emphasis added). Accordingly, although Plaintiff testified to experiencing pain in both elbows, the ALJ determined that Plaintiff's pain symptoms "are not entirely consistent with the medical evidence." *Id.* In line with these findings—along with Plaintiff's testimony that he could lift twenty to thirty pounds but felt pain in his left shoulder— the ALJ limited Plaintiff to "light work" (defined as lifting no more than twenty pounds) and restricted him to "frequently" (defined as occurring from one-third to two-thirds of the time) reaching overhead with his left upper extremity. R. at 22-23; *see* 20 C.F.R. § 404.1567(b); SSR 83-10. In short, the ALJ properly considered conflicting evidence regarding the severity of

Plaintiff's elbow impairment and determined what, if any, corresponding limitations are appropriate.[4]

b.  Step Five Analysis

Plaintiff argues that the ALJ's findings at step five are unsupported by substantial evidence because there is an alleged contradiction between the testimony provided by the vocational expert and the information available in the Dictionary of Occupational Titles ("DOT"). Plaintiff notes that in his RFC determination, the ALJ found that Plaintiff is limited to "carry[ing] out simple instructions." Br. at 16 (citing R. at 22). According to Plaintiff, this limitation corresponds to a capacity for reasoning level 1 as defined by the DOT. Br. at 16. Yet Plaintiff submits that the three representative jobs provided by the vocational expert all required a reasoning level 2 or 3. Br. at 16. By nonetheless finding Plaintiff capable of performing these representative jobs, Plaintiff concludes, the ALJ failed to "identify and resolve obvious conflicts" in the evidence, rendering his decision unsupported by substantial evidence. Br. at 18.

This argument fails for a few reasons.

First, Plaintiff did not object to the vocational expert's testimony on this basis at the administrative hearing, and thus his present challenge is untimely.[5] *See* R. at 54-63; *Christopher F. v. Kijakazi*, No. 21-516, 2022 WL 9169835, at *17 (D.N.J. Oct. 14, 2022) ("Plaintiff's counsel never objected or challenged the vocational expert's testimony in this regard at the administrative hearing. Plaintiff's current attempt to raise these challenges therefore comes too late." (internal citation omitted)); *O'Neill v. Comm'r of Soc. Sec.*, 18-698, 2019 WL 413539, at *9 (D.N.J. Jan.

---

[4] Plaintiff argues that the ALJ erred by not imposing a limitation to "frequent handling and fingering" despite indicating in his decision that he had done so. Br. at 14 (citing R. at 24). However, because none of the representative jobs considered at step five require more than frequent handling or fingering, *see* DICOT 209.687-026 (G.P.O.), 1991 WL 671813 (mail clerk); DICOT 209.587-034 (G.P.O.), 1991 WL 671802 (merchandise marker); DICOT 323.687-014 (G.P.O.), 1991 WL 672783 (housekeeping cleaner), this omission is of no consequence.

[5] The Court notes that Plaintiff's reply brief does not mention his argument regarding step five. *See* Reply. Nonetheless, because Plaintiff does not explicitly relinquish this argument, the Court will consider it on the merits.

31, 2019) (rejecting appeal where "a discrepancy between the [vocational expert]'s testimony and the DOT listings is *unexplored* during the hearing but is later raised by the plaintiff in challenging the ALJ's ruling").

Second, Plaintiff is incorrect that all three representative jobs provided by the vocational expert require a reasoning level of 2 or 3. Namely, housekeeping cleaner is defined as a reasoning level 1 position, requiring the ability to "carry out simple one- or two-step instructions." DICOT 323.687-014 (G.P.O.), 1991 WL 672783. Because Plaintiff does not appear to assert that he is incapable of performing level 1 reasoning, *see* Br. at 15-18, the presence of at least one such position with significant numbers in the national economy renders him able to perform work, supporting the ALJ's decision, *Suzanne B. v. Kjakazi*, No. 21-1217, 2023 WL 4232319, at \*20 (D.N.J. June 27, 2023) (declining to address arguments regarding whether Plaintiff could perform reasoning level 2 jobs "because Plaintiff is capable of performing at least one job with a reasoning level 1 that exists in significant numbers in the national economy"); *Inman v. Berryhill*, No. 18-103, 2018 WL 7247123, at \*7 (M.D. Pa. Dec. 28, 2018), *report and recommendation adopted*, No. 18-103, 2019 WL 469912 (M.D. Pa. Feb. 6, 2019) ("Because the ALJ provides at least one job in the national economy existing in significant numbers that [the plaintiff] can perform, we find that there is no cause for remand on this ground.").

Third, contrary to Plaintiff's assertion, a limitation to "simple instructions" does not in fact preclude the ability to perform a position requiring reasoning level 2. *Money v. Barnhart*, 91 Fed. Appx. 210, 215 (3d Cir. 2004) ("Working at reasoning level 2 would not contradict the mandate that [the plaintiff's] work be simple, routine and repetitive."); *Donna R. v. Kijakazi*, No. 20-15449, 2022 WL 13009149, at \*20 (D.N.J. Oct. 21, 2022) (holding that plaintiff's argument that "the restriction to work involving 'simple instructions' is inconsistent with . . . occupations that require

reasoning level 2" is "not well taken"). Given that one of the representative jobs with significant numbers in the national economy, mail clerk, requires 1evel 2 reasoning, this is yet another basis on which to find Plaintiff capable of performing work. *See* DICOT 209.687-026 (G.P.O.), 1991 WL 671813; *Suzzane B.*, 2023 WL 4232319, at *20 (D.N.J. June 27, 2023).

Finally, even a reasoning level 3 job does not automatically conflict with a limitation to capacity for following "simple instructions." Instead, to determine whether a conflict exists, courts examine the following factors: "whether plaintiff actually argued that he was incapable of performing the jobs recommended by the [vocational expert]; whether inconsistencies between the [vocational expert]'s testimony and the DOT were identified at the hearing; and whether or not the occupations listed by the [vocational expert] were intended to be exhaustive or were merely illustrative." *Statkiewicz v. Kijakazi*, No. 21-4316, 2022 WL 807421, at *7 (D.N.J. Mar. 16, 2022) (citing *Zirnsak v. Colvin*, 777 F.3d 607, 618 (3d Cir. 2014)). Here, Plaintiff did not argue he was incapable of performing the position requiring reasoning level 3 (mail clerk); the vocational expert stated that her testimony was consistent with the DOT except where the latter was silent; and the vocational expert made clear that the jobs she provided were not exhaustive but "some examples." R. at 55-57. Based on this evidence, there is no conflict between Plaintiff's limitation to "simple instructions" and his ability to perform reasoning level 3 work as a mail clerk. *See Statkiewicz*, 2022 WL 807421, at *7 (finding plaintiff capable of performing job requiring reasoning level 3 where all three factors were met).

## V.    **CONCLUSION**

In sum, the ALJ neither erred in determining the RFC, nor in relying upon the vocational expert's testimony at step five of his analysis. Therefore, the ALJ's decision is affirmed.

**Accordingly, IT IS** on this 7th day of February, 2025,

**ORDERED** that Plaintiff's appeal (ECF No. 1) is **DENIED**; and it is further

**ORDERED** that the decision of the Administrative Law Judge is hereby **AFFIRMED**;

and it is further

**ORDERED** that the Clerk of the Court shall mark this matter as **CLOSED.**

**SO ORDERED.**

*/s/ Claire C. Cecchi*

**CLAIRE C. CECCHI, U.S.D.J.**